## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CRYSTAL HENSON,
o/b/o M.D.R.H., a minor,

      Plaintiff,

v.                                                    CIVIL ACTION NO. 3:20-cv-00673

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

      Defendant.


### PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Crystal Henson, on behalf of her biological child M.D.R.H. ("Claimant" or "M.H."), seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") following remand, denying for a second time her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (ECF No. 1.) By standing order entered on January 4, 2016, and filed in this case on October 13, 2020, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Presently pending before this Court are Claimant's Brief in

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Support of Her Judgment on the Pleadings (ECF No. 12) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 13).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's final decision on remand (ECF No. 12), **GRANT** the Commissioner's request to affirm her final decision (ECF No. 13), **AFFIRM** the Commissioner's final decision, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

This matter is before the Court following a Sentence Four remand. On February 2, 2012, Plaintiff, Crystal Henson ("Claimant's mother"), filed an application[2] for children's supplemental security income benefits on behalf of her child M.H., who was under the age of eighteen at the time. *See Thomas v. Colvin*, 213 F. Supp. 3d 806, 807 (S.D. W. Va. 2016). The application alleged difficulties in reading, math, and spelling, with a disability onset date of February 1, 2011, when M.H. was approximately seven years old. *Id.* (Tr. 452.)

The claim was denied initially on May 2, 2012, and again upon reconsideration on July 13, 2012. (Tr. 11, 80-86, 424.) On August 8, 2012, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The hearing was held on September 25, 2013, in Huntington, West Virginia, where Claimant's mother testified. *Id.* By decision dated October 11, 2013, ALJ Jerry Meade determined that Claimant was not entitled to benefits. *Id.* The ALJ's decision (the "Initial Decision") became the final decision of the

---

[2] Claimant's mother filed a prior application in May 2011; however, she did not pursue that claim further after it was denied at the initial level by the state agency in July 2011. (Tr. 11.)

Commissioner on October 28, 2014, when the Appeals Council denied Claimant's request for review. *Id.* Subsequently, Claimant sought review in this Court pursuant to 42 U.S.C. § 405(g). *Id.*

On September 30, 2016, this Court determined that the Initial Decision was not supported by substantial evidence and remanded Claimant's case to the Social Security Administration for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). *See Thomas*, 213 F. Supp. 3d at 813. Inconsistencies between the evidence of record and the Initial Decision—such as misstatements of, and omission of, evaluators' findings, as well as failure to explain the weight given to evaluators' opinions—prevented a meaningful review by the Court. *Id.* at 812-13.

On remand, the Appeals Council vacated the ALJ's December 7, 2018 Initial Decision and directed the ALJ to issue a new decision.[3] (Tr. 461-64.) The ALJ held a second hearing on August 27, 2019, during which Claimant's mother, as well as M.H., and witness Kinsey S. Hall, testified. (Tr. 387-420.) Claimant was represented by counsel during these proceedings. (*See id.*) On September 26, 2019, the ALJ issued a new decision (the "Remand Decision") finding that M.H. was not disabled or entitled to children's supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. (Tr. 380.) Claimant then sought review of the ALJ's Remand Decision by the Appeals Council on October 16, 2019. (Tr. 344.)  The Appeals Council denied Claimant's request for review on August 12, 2020, and the Remand Decision became the final decision of the Commissioner on that date.  (*Id.* at 344-45.)

---

[3] Prior to the remand, Claimant made a protectively-filed claim for Title XVI disability benefits on January 8, 2015. (Tr. 358.) The Appeals Council subsequently directed the ALJ to consolidate the subsequent claim with the remanded claim, incorporate the evidence to the extent not duplicative, and issue a consolidated decision.

3

Claimant timely brought the present action on October 11, 2020, seeking judicial review of the ALJ's Remand Decision pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference. (ECF No. 1.)  The Commissioner filed an Answer (ECF No. 10) and a transcript of the administrative proceedings (ECF No. 11). Claimant subsequently filed her timely Brief in Support of Her Judgment on the Pleadings (ECF No. 12), and in response, the Commissioner filed her Brief in Support of Defendant's Decision (ECF No. 13). As such, this matter is fully briefed and ready for resolution.

*B. Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

Prior to and during the relevant period, M.H. received regular medical care from University Physicians & Surgeons (Tr. 257-68).  In January 2011 (prior to the relevant period), M.H.'s physician diagnosed ADHD, but noted that the diagnosis was "[q]uestionable" (Tr. 286). In March 2011, M.H. and Claimant's mother presented to M.H.'s primary care provider at University Physicians & Surgeons, reporting concerns with M.H.'s behavior, hyperactivity, poor sleep, and poor attention span. (Tr. 257-343.) M.H. was seen for an ADHD and behavioral evaluation and referred to in-house psychology for further evaluation. (*Id.*) The provider had a "[l]engthy discussion about discipline and settling limits." (Tr. 275.) The Claimant's medical records do not indicate that Claimant followed up with the referral.

On July 20, 2012, M.H. presented to University Physicians & Surgeons reporting a spider bite on her finger and was prescribed antibiotics. (Tr. 266-270.) There is no notation regarding behavioral or other mental health issues (*Id.*) In December 2012,

M.H. presented with fever, congestion, abdominal pain, and vomiting. (Tr. 263-66.) Again, there is no mention of behavioral or other mental health issues. (Tr. 263-65.) In January 2013, M.H. visited with a rash. (Tr. 257-59.) Again, the record from this visit contains no mention of behavioral or other mental health issues. (Tr. 257-59.)

### C. Consultative Medical Examinations

On June 28, 2011, Claimant presented to Penny Perdue, M.A. ("Perdue") for a consultative examination in connection with this claim. (Tr. 230.) Perdue diagnosed ADHD and disruptive behavior disorder but noted that her diagnoses were based on Claimant's mother's reports of M.H.'s behavior (Tr.231-32). After examining M.H., Ms. Perdue concluded that M.H.'s speech was normal; her social functioning during the examination was only mildly deficient due to her activity level; although she was mildly resistant to demonstrating her abilities and she was very active; she was "mostly cooperative" in terms of behavior; her persistence was only mildly deficient; and her pace was within normal limits (Tr.232). With appropriate treatment, Ms. Perdue concluded, M.H.'s prognosis was fair (Tr. 232).

Don Gossett, M.A., Ed. S., a licensed school psychologist, evaluated M.H. on behalf of Cabell County Board of Education in January 2012 (Tr. 242-45). M.H. scored in the average to low-average ranges in terms of intellectual functioning (Tr. 243). Mr. Gossett found M.H. to be pleasant, happy, and cooperative (Tr. 245). Although she was somewhat impulsive and distracted, M.H. did well with ongoing prompting and redirection, and Mr.Gossett recommended individualized instruction, noting that she was "reasonably bright" (Tr. 245).

Rachel Arthur, M.A. ("Arthur"), examined M.H. in July 2012 (Tr. 249-52). Although M.H. was active and exhibited fidgeting during the examination, she was

cooperative, friendly, and interacted appropriately (Tr. 251). Her eye contact and verbal interactions were adequate (Tr. 251). Her speech was understandable notwithstanding some mild articulation difficulties (Tr.251). Although her mood was euthymic, her affect, thought process, and thought content were normal (Tr. 251). In terms of perception, she reported a history of seeing ghosts, but no other hallucinations or illusions (Tr. 251). Her insight was fair, and her judgment was normal (Tr. 251). Her recent memory and concentration were "mildly" deficient, but her recent and remote memory were normal (Tr. 251). Arthur diagnosed ADHD only, which was based on Claimant's mother's reports of M.H.'s symptoms, and specifically ruled out a learning disability and any diagnosis based on M.H.'s hallucinations as being not supported by the facts (Tr. 251). Ms. Arthur concluded that M.H.'s prognosis was fair, noting that a better prognosis may be appropriate if Claimant's mother were interested in using medication to treat M.H.'s ADHD (Tr. 252). On the subject of M.H.'s cognition, Arthur concluded that M.H. was in the average range in terms of intellectual functioning and low average in terms of memory skills (Tr. 252). Regarding social functioning, Arthur concluded that M.H. was within normal limits based upon her examination. In terms of persistence and pace, Arthur noted that, based on her examination, M.H.'s ability to stay on task and keep pace were within normal limits (Tr. 252).

Lester Sargent, M.A., evaluated M.H. in August 2015 (Tr. 739-44). M.H. was entering the sixth grade and reportedly had been suspended from school and kicked off the bus for fighting (Tr. 780). A mental status examination showed evidence of mild psychomotor agitation and restlessness, normal immediate memory, moderately impaired recent memory, mildly deficient remote memory, moderately impaired concentration, and mildly deficient persistence and normal pace (Tr. 742). Mr. Sargent

assessed M.H. with only mildly impaired social functioning and concluded that her cognitive abilities fell within the borderline range of intellectual functioning (Tr. 742). He also assessed ADHD, Combined Type, Oppositional Defiant disorder, and Borderline Intellectual Function (Tr. 743).

### D. Other Medical Evaluations

Linsey Shaffer, a Speech-Language Pathologist, evaluated M.H. in July 2015 (Tr. 736-37). At that time, M.H. was taking Adderall in the morning and afternoon (Tr. 736). Language testing showed deficits in some areas and strengths in other areas (Tr. 736-37). Ms. Shaffer concluded that M.H. had some articulation errors, but no deficits in speech intelligibility (Tr.73). She assessed M.H. with a Mixed Receptive-Expressive Language Disorder and concluded that her rehabilitation potential was good (Tr. 737).

Kristin M. Blanks, M.A., a licensed psychologist with the county youth services division, evaluated M.H. in April 2017, following truancy, to determine whether she required behavioral health services (Tr. 746). M.H. was 13-years-old and in the seventh grade (Tr. 746). Claimant's mother reported that M.H. typically never refused to go to school and was a "pretty good kid" at home (Tr. 747). She noted that M.H. would occasionally "back talk" over rules and requests, but she felt it was "typical teenage girl back talk" and that M.H. was typically not aggressive towards others (Tr. 747). Claimant's mother also reported that M.H. seemed to enjoy her new school and was making all "A's and B's" (Tr. 747-48). A mental status examination showed that M.H. had mildly impaired social skills with some immaturity, but was cooperative, with normal memory and concentration, no impairment in judgment, and normal thought content and processes (Tr.749). Ms. Blanks concluded that behavioral health services did not appear to be warranted (Tr. 752). She opined that M.H. appeared to have made a poor decision

when she vandalized school property, but she did not typically display serious behavior problems at school (Tr. 752).

### E.  *State Agency Expert Consultant Opinions*

In April 2012, Paula J. Bickham, Ph.D., concluded that M.H. was not disabled after reviewing the record evidence, finding that M.H. had less than a marked limitation in acquiring and using information and attending and completing tasks, and no limitation in interacting and relating with others and moving about and manipulating objects (Tr. 53-56).   In July 2012, James Binder, M.D., concluded that M.H. was not disabled after reviewing the record evidence, finding that M.H. had less than a marked limitation in acquiring and using information, attending and completing tasks, and caring for herself, and no limitation in interacting and relating with others, moving about and manipulating objects, and health and physical well-being (Tr. 62-63).

### F.  *Sequential Evaluation Process*

A person under the age of 18 is disabled under the Social Security Act if that person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration has established a three-step sequential evaluation process to aid in this determination for a person under age eighteen (a "child"). 20 C.F.R. § 416.924(a); *see also Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 92–93 (4th Cir. 2003) (unpublished) (summarizing three-step evaluation process for child SSI claims). The claimant bears the burden of production and proof at each of the three steps, as well as the ultimate burden to prove the child is disabled within

the meaning of the Social Security Act. 42 U.S.C. § 1383(c); 20 C.F.R. § 416.912(a). *Barnes v. Colvin*, 4:12-cv-254, 2014 WL 126039, at *1 (E.D.N.C. Jan. 13, 2014).

At the first step in the sequential evaluation process, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). In determining whether a claimant has engaged in SGA, the Commissioner uses the same rules for children under age 18 as he does for adults. 20 C.F.R. § 416.924(b). If the child is engaging in such activity, the analysis ends and the child is found to be not disabled. *Id.* § 416.924(c). If the child is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers whether the child has a medically-determinable "severe" impairment or combination of impairments. *Id.* § 416.924(c). A "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not sufficiently "severe." *Id.* If the child does not have a medically-determinable severe impairment or combination of impairments, she is not disabled. *Id.* If the child has a severe impairment or combination of impairments, the analysis proceeds to the third step. *Id.*

At the third and final step, the ALJ determines whether such impairment or combination of impairments fully equals, medically equals, or functionally equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(d). If the impairment or combination of impairments is fully equivalent or medically equivalent to this criteria, the child is found to be disabled and is awarded benefits. *Id.* § 416.924(d)(1). If the ALJ determines that the child's impairment or combination of impairments does not fully equal or medically equal this criteria, the ALJ must take two additional steps to then determine whether the child's impairment or

combination of impairments are functionally equivalent to the listed criteria. *See* 20 C.F.R. § 416.926a(a).

To assess whether a child's severe impairment or combination of impairments functionally equals the listed criteria, the ALJ first considers how the child functions in activities in terms of six "domains," which are broad areas of functioning intended to capture what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). The six "domains" of functioning are listed as follows:

> (1) acquiring and using information;
> (2) attending and completing tasks;
> (3) interacting and relating with others;
> (4) moving about and manipulating objects;
> (5) caring for oneself; and
> (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). Considering the child's functions in each domain, the ALJ must then determine whether the child has a medically-determinable impairment or combination of impairments that results either in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1). A child has a "marked" limitation in a domain when her impairment or combination of impairments interferes seriously with her ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only one is limited. *Id.* A child has an "extreme" limitation in a domain when her impairment or combination of impairments interferes very seriously with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions is

limited. *See id.* If the impairment or combination of impairments is functionally equivalent to the listed criteria, the child is found to be disabled and is awarded benefits. *Id.* § 416.924(d)(1). If not, the child is found to be not disabled. *Id.* § 416.924(d)(2).

Applying the sequential evaluation process in this case, the ALJ concluded that M.H. was not disabled.  (Tr. 380.)  At step one, the ALJ determined that M.H. had not engaged in substantial gainful activity since the February 2, 2012 application date, and moved to the next inquiry in the sequence. (Tr. 361.)

At step two, the ALJ determined that M.H. had eight severe impairments: Mixed Receptive-Expressive Language Disorder; Depression; Anxiety; Attention Deficit Hyperactivity Disorder ("ADHD"); Learning Disorder; Borderline Intellectual Functioning; Disruptive Behavior Disorder; and Oppositional Defiant Disorder. (*Id.*) Finding that these impairments were "severe" under § 416.924(c), the ALJ then moved to the next inquiry in the sequence. (*Id.*)

At step three, the ALJ determined that M.H.'s impairments did not fully equal or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 361-62.)

The ALJ then determined whether M.H.'s impairments were functionally equivalent to a listing under § 416.926a(a). Turning to the first step of this two-step inquiry, the ALJ assessed M.H.'s function in the six "domains" under 20 C.F.R. § 416.926a(b)(1). (Tr. 362-380.) Next, the ALJ determined whether M.H. had a medically-determinable impairment or combination of impairments that resulted either in "marked" limitations in two of the domains, or an "extreme" limitation in one of the domains under 20 C.F.R. § 416.926a(b)(1). The ALJ determined that M.H. had no limitations in either the fourth domain, moving about and manipulating objects; or the

sixth domain, health and physical well-being. (Tr. 372-380.) The ALJ further found that M.H. had "less than marked" limitations in the first domain, "acquiring and using information;" the second domain, attending and completing tasks; the third domain, interacting and relating with others; and the fifth domain, caring for oneself. (*Id.*) Because the ALJ determined that M.H. did not have either "marked" limitations in two of the domains or "extreme" limitations in one of the domains, he determined that M.H.'s impairments were not functionally equivalent to the listed criteria. Accordingly, the ALJ determined that M.H. was not disabled under the Act. (Tr. 380.)

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."[4] *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this

---

[4] This Court's previous remand of the ALJ's Initial Decision does not change the role of this Court in reviewing the Remand Decision here. A sentence-four remand "terminates the civil action, so that each final decision by the secretary is reviewable by a separate piece of litigation." *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990). Thus, when an action returns to the district court following remand for further proceedings, this Court's standard of review remains the same: "to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied." *Barbee v. Berryhill*, 2018 WL 3548734, at *1 (N.D. Ala. July 24, 2018).

Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence.  *Id.* (quoting *Craig*, 76 F.3d at 589).

### III.    ANALYSIS

Claimant argues that the ALJ erred for two central reasons. First, she asserts that the ALJ erred in assessing the "less than marked" severity of Claimant's limitations in the Remand Decision because the ALJ "closed his eyes" to evidence of M.H.'s academic struggles, behavioral problems at school, as well as three psychologists' observations of M.H.'s "psychological problems," and "summarily disregarded" the hearing testimony of Claimant, Claimant's mother, and Claimant's safe at home administrator. (*Id.* at 7-8.) Claimant asserts that "it is obvious that Claimant has at least "marked limitations" in the first domain, acquiring and using information; the second domain, attending and completing tasks; the third domain, interacting and relating with others; and the fifth domain, caring for oneself. (*Id.* at 8.)

Finally, Claimant asserts that the ALJ erred because he failed to meet his obligation to develop a full and fair record in the hearing. (*Id.* at 9.) Specifically, Claimant argues that the ALJ commented in his Initial Decision that the consulting psychologist Penny Perdue, M.A. did not provide a mental functional assessment statement and that, because consulting psychological evaluations were obtained by the Agency, the ALJ should have requested mental functional assessment statements to obtain the needed clarification. (ECF No. 12 at 8) (citing Tr. 17-18.) Claimant asks this Court to reverse the

Commissioner's decision and award her benefits or to remand this matter to the Social Security Administration for rehearing. (*Id.*)

The Commissioner responds that substantial evidence supports the ALJ's "comprehensive 23-page" Remand Decision. (ECF No. 13 at 1.) Specifically, "the objective medical evidence, medical treatment evidence, and medical source opinion evidence supported the conclusion that [Claimant] was not as functionally impaired as alleged." (*Id.* at 2.) The Commissioner further responds that substantial evidence supports the ALJ's finding that Claimant's "allegations regarding the intensity, persistence, and limiting effects of [her] symptoms were not entirely consistent with the medical and other evidence of record." (*Id.* at 3.)

A. *ALJ's Assessment of the Severity of Claimant's Limitations*

First, Claimant argues that the ALJ erred in assessing the severity of Claimant's limitations in the Remand Decision. (ECF No. 12 at 8.) Specifically, he "summarily disregarded" the testimony of Claimant, Claimant's mother, and Claimant's safe at home administrator. (ECF No. 12 at 7) (citing TR. 364, 372.) Claimant asserts that this testimony is supported by objective evidence of M.H.'s lack of academic proficiency and continued behavior problems at school, as well as the consistent observations of M.H.'s "psychological problems" by three different psychologists. (ECF No. 12 at 7-8.) Claimant concludes that since this evidence exists and was ignored, ALJ "has not resolved his findings in a meaningful manner." (ECF No. 12 at 8.) In fact, Claimant asserts that not only are the ALJ's factual findings unsupported by substantial evidence on the record, but that there is *no* evidence inconsistent with a finding that Claimant is disabled. (ECF No. 12 at 9.) Claimant concludes that "it is obvious that Claimant has at least "marked limitations" in the first domain, acquiring and using information; the second domain,

attending and completing tasks; the third domain, interacting and relating with others; and the fifth domain, caring for oneself. (*Id*. at 8.)

In evaluating the intensity, persistence, and severity of a claimant's endorsed limitations, the ALJ must consider all of the relevant evidence on the record, including all the relevant medical evidence; he "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). The desired result is a decision which "build[s] an accurate and logical bridge from the evidence to his conclusion," including an explanation for the ALJ's decision to give less weight to evidence that conflicts with his conclusion. *Id*. at 100.

In reviewing the record for substantial evidence, the Court's role is not to "re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Rather, in reviewing the ALJ's "unenviable task of choosing between the alternatives," presented by conflicting evidence, the Court's task is to ensure that the ALJ has carefully considered the evidence, made reasonable and supportable inferences, and explained his conclusions without ignoring conflicting evidence. *McCall v. Apfel*, 47 F. Supp. 2d 723, 731 (S.D. W. Va. 1999).

Here, the ALJ's Remand Decision does not "cherry-pick" facts that support his conclusion while "turn[ing] a blind eye" to conflicting evidence. To the contrary, the ALJ carefully considered the evidence, made reasonable and supportable inferences, and explained his conclusions in detail. First, Claimant's argument that the ALJ "summarily

disregarded" the testimony of M.H., Claimant's mother, and Claimant's safe at home administrator, (*see* ECF No. 12 at 7), is not borne out by the record.

The ALJ expressly considered the testimony of Claimant's mother, including her testimony concerning M.H.'s lack of academic proficiency. (Tr. 363.) The Remand Decision recounted in great detail the testimony of Claimant's mother regarding M.H.'s continued designation with an Individualized Education Program (IEP) plan at school, enrollment in special education classes, failing grades, and continued inability to focus, concentrate, or sit still. (*Id.*) The Remand Decision further considered the testimony of Claimant's mother regarding M.H.'s behavioral problems, expressly noting her testimony that M.H. continued to act out in school, M.H.'s history of multiple school transfers and suspensions, truancy, tendency to fight others and break things, and vandalism to school bus seats. (*Id.*)

Rather than "summarily disregard[ing] this testimony, the ALJ made a proper credibility determination and explained the basis for that determination with specific evidence in the record. The ALJ explained that the testimony and written statement of the Claimant's mother was given "little weight" because it did not come "from a neutral, unbiased source." (Tr. 372.) Further, "[m]ost importantly, the allegations concerning the extent of the claimant's difficulties are not entirely consistent with the clinical findings and diagnostic studies in the record." (Tr. 372.) Specifically, the ALJ considered the allegations of Claimant's mother in the context of the medical and other evidence of record and explained why they were not entirely consistent with such evidence.[5] (Tr. 364-71).

---

[5] The ALJ engaged in the same process with respect to the testimony of witnesses Kinsey Hall and M.H. (Tr. 364, 372.)

The ALJ noted that Claimant's mother expressed concerns about M.H.'s behavior and poor attention to her primary care provider in 2011, but the record did not show that M.H. underwent the in-house psych evaluation or treatment recommended at that time (Tr. 273-75, 364). Further, while Claimant's mother endorsed speech problems, the ALJ noted that at a consultative examination with Rachel Arthur, M.A. in July 2012, Arthur indicated that M.H.'s speech was understandable AND educational re-evaluations from February 2013 stated that in response to speech therapy services received, "her connected speech also improved over the past year." (Tr. 366)

Claimant's brief states, "what about the findings of three (3) psychologists who have made consistent observations concerning Claimant's psychological problems?" (ECF No. 12 at 7) (citing Tr. 230-252.) Claimant does not point to any specific "observations" or identify the "psychological problems" from the psychologists' findings. (*See id*.) However, a review of the psychological evaluations cited by Claimant is unremarkable, and the record shows that the ALJ specifically relied on these psychologists' reports as evidence that Claimant's limitations were only "less than marked" or "moderate." (Tr. 365-66.) The ALJ expressly considered and gave considerable weight to the June 28, 2011 consultative examination by Penny Perdue, M.A., where a mental status examination showed that M.H. had some deficiencies in memory and concentration, and mildly deficient social functioning, but an appropriate mood, normal affect, coherent speech, unremarkable thought process and content, and normal pace. (Tr. 230-37, 364-65). The ALJ also expressly considered, and expressly noted that he gave considerable weight to, the assessment of school psychologist Don Gossett, M.A., Ed.S. who evaluated M.H. on January 10, 2012. (Tr. 365.) Therein, Gossett indicated that M.H. "appears reasonably bright," with an IQ in the Average range, with mild articulation difficulties and problems

with concentration. (Tr. 245-46.) While the examination did note some limitation, "having a difficulty in a functional area does not mean the limitation is marked or extreme." *Jones ex rel. B.J. v. Astrue*, 1:09-CV-45, 2012 WL 1267875, at *7 (M.D.N.C. Apr. 16, 2012). As to the third psychologist, the examination by Rachel Arthur, M.A. on July 9, 2012 was also expressly considered by the ALJ and relied on to explain why he accorded less weight to the testimony of M.H.'s mother. (Tr. 366.) Specifically, the ALJ noted that Claimant's mother had alleged Claimant was dyslexic and could not read, write or spell, and had reported that despite being in special education, M.H. was still working below grade level in all areas and made little progress. (*Id.*) However, Arthur noted that M.H.'s report card indicated that she was progressing adequately. (*Id.*) Similarly, Claimant's mother Endorsed hyperactivity, but Arthur noted only mild deficiency in concentration, and Arthur's clinical impression was ADHD combined type but no evidence of a behavioral/conduct disorder. (*Id.*) The prognosis was listed as fair, but Arthur qualified this finding with the statement that her prognosis was due to the fact "that mother is not interested in treating her daughter's ADHD with medications used to improve focus and concentration and to decrease hyperactivity." (Tr. 366) (citing Tr. 252.)

A review of Arthur's report demonstrates that it supports the ALJ's finding. Arthur indicated M.H. exhibited social functioning within normal limits with no resistance or obstinate behavior, a pace within normal limits, understandable speech, average intellectual functioning, a normal affect, no apparent signs of delusions, preoccupations, or obsessions, fair insight, judgment within normal limits, and only mildly deficient concentration. (Tr. 249-252.) Arthur concluded that M.H. did not meet diagnostic criteria for a learning disability. (Tr. 251.)

Just as he explained the reason for giving less weight to the testimony of Claimant's mother, the ALJ explained why he gave considerable weight to Arthur's assessment: it was "supported by explanation, examination, and objective findings directly observed by the examiner," and also Arthur "reviewed available treating source records/educational documentation received prior to rendering her assessment." (Tr. 366.) The ALJ's credibility determination built an accurate and logical bridge from the evidence to his conclusion, and included an explanation for the ALJ's decision to give less weight to evidence that conflicted with his conclusion. *Arakas*, 983 F.3d at 100.

As set forth *supra*, the Court's role is to ensure that the decision is supported by substantial evidence—not to re-weigh conflicting evidence or substitute its own judgment for that of the Agency. Thus, when—as is the case here—the ALJ has carefully considered the evidence, made reasonable and supportable inferences, and explained his conclusions without ignoring conflicting evidence, his credibility findings are "virtually unreviewable by this Court on appeal." *Burns v. Colvin*, No. 13-25614, 2015 WL 1321214, at *16 (S.D. W.Va. Feb. 2, 2015) (quoting *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)); *McCall*, 47 F. Supp. 2d at 731. The ALJ's credibility determination is supported by substantial evidence, and Claimant's vague reference to conflicting evidence that was properly addressed by the ALJ does not overcome this fact.

B.  *ALJ's Development of the Record*

Finally, Claimant argues that the ALJ erred because he failed to meet his obligation to develop a full and fair record in the hearing. (ECF No. 12 at 8-9.) Specifically, in the Initial Decision, the ALJ "commented that neither of the consulting psychologists [Perdue and Arthur] . . . provided a mental functional assessment statement." (ECF No. 12 at 8) (citing Tr. 17-18.) Claimant reasons that "[i]n as much as these psychological evaluations

were obtained by the Social Security Administration, the [ALJ] should have requested that the consulting examiners provide mental functional assessment statements in order to clarify their opinions as to the extent of Claimant's limitations." (ECF No. 12 at 8-9.)

The Fourth Circuit has noted that an ALJ has a "responsibility to help develop the evidence." *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Id.* However, the Fourth Circuit's primary concern in this context was the *pro se* status of the claimant. *See id.* Where an applicant is represented by counsel, an ALJ's duty to develop the record generally arises only where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *See Ferrell v. Astrue*, 11-503, 2012 WL 4378131, at *10 (S.D. W. Va. June 22, 2012). "[T]o prevail . . . on the argument that the ALJ failed to develop the record," the claimant "must provide a factual foundation upon which the Court can perceive a gap in the evidentiary record that is prejudicial to [the] [c]laimant." *Blankenship v. Astrue*, 11-5, 2012 WL 259952 (S.D. W. Va. Jan. 27, 2012). And, to prove prejudice, the claimant must prove that evidence existed that would have altered the result. *Id.*

Here, Claimant has been represented by counsel during all relevant proceedings, and thus retained her burden of persuasion. Yet Claimant has provided no factual foundation upon which the Court can perceive any gap in the evidentiary record. (*See* ECF No. 12.) The regulations expressly provide that a record is not rendered incomplete simply because there is not a medical source explaining what the claimant can still do despite her impairments. *See* 20 C.F.R. § 416.913(b)(6) (stating that "lack of medical source

statement will not make the record incomplete"). Thus, Claimant's argument on this basis is meritless.

Furthermore, even if Claimant had demonstrated that the lack of such a statement would have created a prejudicial gap in the evidentiary record, her argument nonetheless fails as Dr. Binder, the State agency expert medical consultant, reviewed Perdue and Arthur's reports and provided a statement about what M.H. could still do notwithstanding her impairments. (Tr. 61-66.) Thus, the ALJ had medical source opinion evidence in the record. *See* 20 C.F.R. § 416.913(b) (explaining that an ALJ will consider residual functional capacity assessments made by State agency medical consultants as the equivalent of medical source opinion statements). It was reasonable and appropriate for the ALJ to rely upon Dr. Binder's assessment. (Tr. 371). Indeed, tellingly, Claimant offers no authority for the proposition that an ALJ must solicit medical source opinion statements from consultative examiners where the record contains other medical source opinion statements.

Finally, just as Claimant has provided no factual foundation upon which the Court can perceive any gap in the evidentiary record, she has also failed to show any prejudice caused by that gap. To the contrary, the observations of Ms. Perdue and Ms. Arthur do not suggest that M.H. was any more functionally limited than the ALJ found. As mentioned above, Ms. Perdue noted only mild issues with respect to M.H.'s social functioning, behavior, and persistence, and that M.H.'s pace and speech were normal (Tr. 232). Likewise, Ms. Arthur concluded that M.H.'s ability to stay on task and keep pace were within normal limits (Tr. 252). This evidence does not suggest that either Ms. Perdue or Ms. Arthur would offer medical source opinion statements inconsistent with the ALJ's decision that would have altered the result. As such, Claimant cannot establish any

prejudice arising from the lack of these statements in the record. Therefore, the undersigned **FINDS** that the ALJ's determination is supported by substantial evidence and adequately explained.  *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (explaining standard of review).

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 12), **GRANT** the Commissioner's request to affirm his decision (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: March 7, 2022

Dwane L. Tinsley
United States Magistrate Judge